UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN GROMEK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIG LOTS, INC.,<br><br>Defendant. | No. 10 C 4070<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Gromek, individually and on behalf of other similarly situated employees, moves for conditional class certification and an order that judicial notice be sent to all putative collective class members. Plaintiff filed this lawsuit on June 30, 2010 to recover unpaid overtime wages allegedly owed to Assistant Store Managers ("ASMs") who were employed by Defendant Big Lots Stores, Inc. ("Defendant" or "Big Lots") during the relevant statutory time period. For the following reasons, Plaintiff's motion is denied.

**I. BACKGROUND**

Plaintiff Gromek seeks conditional class certification of his claims against Defendant pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"). FLSA requires payment of overtime compensation to all non-exempt employees who work in excess of forty hours per week. 29 U.S.C. § 207(a); 29 C.F.R. § 778.101. However, employers do not have to pay overtime to individual employees "employed in a bona fide executive, administrative, or professional capacity." *Id*. § 213(a)(1). The FLSA does not itself define what it means for an employee to fall within a "white-collar" exemption.

Plaintiff alleges that after Defendant's global reclassification of the ASM position as exempt, putative class members were required or permitted to regularly work in excess of forty hours per week, but never compensated for such hours. Additionally, ASMs did not regularly perform managerial functions, but spent much of their time performing non-managerial and non-exempt functions. This was in violation of the FLSA.

Plaintiff states that he and all of the opt-in Plaintiffs worked as ASMs for Big Lots during the past three years. All ASMs had the same uniform job description. The Plaintiff, opt-in Plaintiffs, and the proposed putative class members were regularly required to perform non-managerial and non-exempt duties such as unloading trucks, stocking merchandise, placing price-tags on merchandise and processing paperwork. The ASMs were paid a salary with no overtime compensation when they worked more than forty hours per week. Plaintiff also alleges that ASMs exercised little to no discretion concerning hiring, firing, rates of pay, job performance, or disciplinary matters. Instead, such functions were handled by upper management. Plaintiff and the opt-in Plaintiffs believe that all ASMs performed the same or similar activities on a regular basis and were subjected to the same practices, procedures and well-established guidelines.

The named Plaintiff is joined by thirty-four opt-in Plaintiffs representing fifteen different states. Plaintiff defines the potential class members as "all current and former ASMs who were employed by Big Lots Stores, Inc., anywhere in the United States (excluding California and New York) at any time during the past three years." Plaintiff alleges that he, and a similarly situated group of misclassified and reclassified individuals, was uniformly denied overtime pay as a result

of a single corporate policy to classify them all as exempt employees, regardless of the store size, geographic location, region, district, or any other factors.

## II. STANDARD OF REVIEW

The FLSAs "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To meet this burden, the plaintiff must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759, 762 (N.D. Ill. 2004). District courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Courts apply a two-step approach to determine whether plaintiffs are "similarly situated." The first step requires plaintiffs to "show there are similarly situated employees who are potential claimants." *Collazo v. Forefront Educ., Inc.*, No. 08 C 5987, 2010 WL 335327, at *2 (N.D. Ill. Jan 28, 2010). Plaintiffs meet this burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id*. The second step follows the completion of the opt-in process and further discovery where "the defendant may ask the Court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell v. Ill. Bell Tel. Co*, 575 F.Supp.2d 930, 933 (N.D.Ill. 2008). The standard for collective action notice is lenient. *Id*. "It is considerably 'less stringent' than the proof required pursuant to Fed. R. Civ. P. 20(a) for

3

joinder or Fed. R. Civ. P. 23 for class certification." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). "[A] plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Ervin v. OS Rest. Serv., Inc.*, 2009 WL 1904544, at *3 (N.D. Ill. July 1, 2009).

**III. DISCUSSION**

At the conditional certification stage, the court requires only a showing that the putative class members were victims of "a single decision, policy, or plan." *Anyere v. Wells Fargo, Co., Inc.*, No. 09 C 2769, 2010 WL 1542180, at *2 (N.D. Ill. April 12, 2010) (citing *Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759, 762 (N.D. Ill. 2004). Proof can be provided through affidavits of potential plaintiffs, identification of potential plaintiffs, and/or evidence of a widespread plan. *Id*. Here, Plaintiff has attached 15 declarations to show that the practice of improperly compensating ASMs is widespread and ongoing. Plaintiff argues that conditional certification is proper because all of the individuals to whom he seeks to provide notice had the same job title, duties and compensation. Likewise, these individuals were all misclassified and denied overtime pay as a result of a single corporate policy to classify them as exempt employees. Given the lenient standard for collective action notice, it seems that Plaintiff has met his burden of showing that there are similarly situated employees who are potential claimants.

This, however, is not the end of the inquiry. In *Johnson, et al. v. Big Lots Stores*, Judge Vance decertified an almost identical class after extensive discovery and a bench trial because there was "significant variation among ASMs in terms of the duties that they perform and the hours they spend at work," rendering the matter unfit for "adjudication as a nationwide collective action." 561 F.Supp.2d 567, 568 (E.D. La. June 20, 2008). Defendant Big Lots argues that

4

Judge Vance's opinion precludes conditional certification here because such a class cannot ultimately be certified.

The *Johnson* complaint was filed on November 23, 2004 and alleged that all Big Lots ASMs worked in excess of forty hours per week and were denied overtime compensation as a result of being misclassified as "exempt" employees under the FLSA. The *Johnson* plaintiffs alleged that "although their formal job descriptions include managerial responsibilities, their actual managerial duties were *de minimis* and did not meet the criteria for exempt executive employees." *Id*. at 569. Similarly, Plaintiff here contends that Big Lots improperly classified ASMs as "executive employees" who were exempt from the overtime provisions of the FLSA, even though such employees did not possess the authority to carry out managerial functions and spent in excess of 90 percent of their time performing non-exempt work. The *Johnson* court conditionally certified the case as a nationwide collective action on July 5, 2005. *Id*. On June 1, 2007, after two years of discovery, Big Lots moved to decertify the conditional class. *Id*. The court denied Big Lots' motion to decertify and additional discovery was taken in preparation for trial. *Id*.

The *Johnson* litigation proceeded to trial, and at the close of the live portion of trial, Big Lots moved for judgment as a matter of law, or in the alternative, for the court to decertify the matter as a collective action. The trial consisted of 62 hours where each party represented its respective claims and defenses. *Johnson*, 561 F.Supp.2d at 570. Following the defendant's motion, the court faced the "vexing question of whether the opt-in-plaintiffs are sufficiently similar such that adjudication of their claims based on representative proof may be done in a

manner that respects the rights of both parties." *Id*. at 571. The *Johnson* court found that the opt-in plaintiffs were not, and therefore decertified the action.

Reaching the conclusion that class certification was inappropriate, the *Johnson* court stated that:

> At a high level of generality opt-in plaintiffs' job duties may be similar in that they are subject to a uniform job description, are required to run individual stores according to corporate policies, and are supervised by store managers. But in terms of individual job duties, the evidence shows that the opt-in plaintiffs have different responsibilities from one another and that individuals themselves will have different duties from day-to-day and within a single day. Such diversity in individual employment situations inhibits Big Lots from proving its statutory exemption defense as to all 936 opt-in plaintiffs on the basis of representative proof. And because the plaintiffs are dissimilar, the Court cannot confidently adjudicate plaintiffs' claims or Big Lots' defense on the merits.

*Id*. at 578-79.

As recognized in *Johnson*, a plaintiff's job title alone is "insufficient to establish the exempt status of an employee. Instead, the court must look beyond the formal ASMs' job descriptions and to their day-to-day responsibilities to determine if individual ASMs are misclassified. The exempt or non-exempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations." *Id*., at 579 (citing 29 C.F.R § 541.2 (post-2004)). In *Johnson*, though plaintiffs asserted that Big Lots implemented a uniform policy or practice of misclassifying ASMs, "they produced no direct evidence suggesting a conscious corporate intention to deny ASMs managerial responsibilities." *Id*. Instead, the plaintiffs offered proof of individual employment circumstances. "The opt-in plaintiffs' characterizations of their day-to-day work activities presented through trial erased the Court's earlier understanding that plaintiffs were similarly

6

situated." *Id*. Likewise, the *Johnson* court recognized that the dissimilarity of the plaintiffs' "self-reported job duties" made it difficult for Big Lots to assert its statutory exemption defense on a collective basis. *Id*. at 586. By way of example, the court noted that the question of how much authority a store manager gave an individual ASM would require calling the managers and co-workers of hundreds of plaintiffs to refute deposition testimony or survey answers. *Id*.

In concluding, the *Johnson* court acknowledged that it expected the evidence at trial to be more uniform and reflect the theory that "Big Lots maintained a uniform corporate policy and practice of misclassifying the ASM *job position*." *Id*. at 587 (emphasis original). During the course of the litigation, however, the plaintiffs strayed from that position as evidenced "by their argument that consideration of evidence from non-opt-in ASMs who hold the same ASM job position was improper because they were unrepresentative." *Id*. The court noted that plaintiffs had suggested that division of the class into subclasses could be appropriate, however that option was not pursued. In the end, the *Johnson* court found it impossible to draw reliable inferences about the job duties of plaintiff as a class. *Id*.

Plaintiff acknowledges that Judge Vance's declassification opinion is an obstacle to certification and attempts to distinguish this case by recognizing that in *Johnson*, variations in employment responsibilities between the opt-in collective action members needed to be analyzed under both pre- and post- 2004 regulations governing the executive exemption. 29 C.F.R. 541.1 *et seq*. The court was thus faced with applying two sets of regulations to a single group of opt-in collective action members. In contrast, this proposed class extends back only to 2007 encompassing only the current regulations in the context of a reclassification. Though this distinction is correct, the reasoning underlying the *Johnson* decision did not focus on difficulties

7

in applying two sets of regulations, but rather in the need to evaluate each plaintiff's actual job duties on a case-by-case basis.

Plaintiff further argues that "the potential for decertification is not a basis upon which conditional certification should be denied." Though this may be true, Plaintiff has failed to demonstrate how the case at hand would differ substantively in facts or theory from the *Johnson* case. What Plaintiff has shown is that putative class members were uniformly classified as exempt and reclassified as non-exempt thus making them eligible for overtime. Similarly, Plaintiffs have submitted declarations from fifteen current and former ASMs who were employed by Big Lots in different stores throughout the country testifying that they performed the same or similar job functions such as unloading trucks and stocking merchandise, performing recovery, and working the cash register among other tasks. Defendant maintains, however, that significant differences are present between the job duties of individual ASMs that cannot be cured through discovery, and therefore, conditionally certifying a class is improper. I agree. Indeed, courts have declined to conditionally certify classes where a determination of every individual's exempt or non-exempt status "requires a detailed factual analysis of his daily activities and responsibilities." *Diaz v. Electronics Boutique of America, Inc.*, 2005 WL 2654270, at *4-5 (W.D.N.Y. 2005).

Given the extensive discovery undergone in *Johnson*, I am currently unwilling to conditionally certify Plaintiff's class. Uniform classification of all ASMs as exempt employees is insufficient to satisfy the similarly situated requirement because there is significant diversity of job experience which precludes the use of representative testimony to establish the exempt status of all Big Lots ASMs. As the *Johnson* court recognized, the "significant diversity among

8

plaintiffs in terms of their job experiences" made it impossible to rule on the merits in an "all or nothing" fashion. *Johnson*, 561 F.Supp.2d at 588.

Acknowledging Plaintiffs' potential claims, I will consider additional briefing articulating how this litigation will differ from *Johnson* in theory, or in fact, and why such differences make this case appropriate for conditional certification.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion is denied.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: December 17, 2010